UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS A. MAIR,

    Plaintiff,

v.

JANET NAPOLITANO, as Secretary of
Department of Homeland Security,

    Defendant.
_____/

CASE NO. 1:10-cv-47

HON. ROBERT HOLMES BELL

**O P I N I O N**

    This Title VII sex discrimination and retaliation case is before the Court on Defendant's motion to dismiss the amended complaint or, in the alternative, for summary judgment. (Dkt. No. 20.) Defendant argues that Plaintiff's gender discrimination claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 21, Def.'s Br. 8-13), that his retaliation claim should be dismissed under Rule 12(b)(6) or, in the alternative, that Defendant is entitled to summary judgment on the retaliation claim under Rule 56 (*id.* at 13-17), and that Plaintiff's claims for relief for certain alleged retaliatory actions should be dismissed under Rule 12(b)(1) for failure to exhaust administrative remedies (*id.* at 17-20). For the reasons that follow, Defendant's motion will be granted under Rule 12(b)(6), and Plaintiff's complaint will be dismissed for failure to state a claim upon which relief can be granted.

### I. Factual Background

According to Plaintiff's complaint, Plaintiff was hired in April, 2002, as a Supervisory Transportation Security Screener by the Transportation Security Administration ("TSA"). (Dkt. No. 16, ¶¶ 1, 7-9.) He worked for Defendant in this capacity from June, 2002, through June 28, 2004. (Dkt. No. 16 at ¶ 11.) He alleges that as a permanent, full-time employee of the federal government, he enjoyed a "just cause" employment contract with Defendant, and had rights to advance notice of applicable workplace rules and to progressive and proportional discipline. (*Id.* at ¶ 10.)

After working as part of a TSA "mobile team" for some time, Plaintiff was assigned permanently to the Traverse City Cherry Capitol Airport ("TVC"). (Dkt. No. 16 at ¶ 2.) While at TVC, Plaintiff was placed under the direct supervision of Michael Deegan. (Dkt. No. 16 at ¶ 12.) Plaintiff alleges that he and Deegan had very different lifestyles and reputations. (Dkt. No. 16 at ¶¶ 12-14.) Plaintiff describes himself as "a family man, who view[s] marriage as a serious, sacred commitment, and recognize[s] women as equal human beings to be treated in a professional, respectful manner." (Dkt. No. 16 at ¶ 13.) By contrast, Plaintiff characterizes Deegan as "a well-known workplace lothario who used his workplace position and authority to recruit and groom female employees for sexual relationships." (Dkt. No. 16 at ¶ 12.) Plaintiff alleges that his "decent, respectful, humane, egalitarian views regarding sex, gender, and women were entirely at odds with Mr. Deegan's uncommitted, 'macho,' harassing, misogynistic, disrespectful view of and approach to women and sex in

2

the workplace and in general." (Dkt. No. 16 at ¶ 14.)

Plaintiff makes several allegations regarding how Deegan's lifestyle manifested itself in the workplace. Plaintiff alleges that Deegan "hit[]-on" one Kathy Humphreys "while she was at her post, working the public security checkpoint." (Dkt. No. 16 at ¶ 15.) The majority of Plaintiff's complaints, however, relate to Deegan's relationship with Angela Miller.[1] Plaintiff alleges that Deegan invited Ms. Miller to "go hot tubbing" with him shortly after she began working at TVC, and that the two went "bar-hopping" while she was Deegan's subordinate. (Dkt. No. 16 at ¶ 15.) Apparently, Ms. Miller responded positively to Deegan's advances and the two began a relationship.[2] (Dkt. No. 16 at ¶ 19.) Plaintiff alleges that as a result of *quid pro quo* considerations related to their relationship, Ms. Miller was promoted from Part-time Screener to Screening Manager. (Dkt. No. 16 at ¶ 15.)

Plaintiff objected to this conduct, and apparently made his objections very well known to all parties at TVC and made those objections known on more than one occasion. (*See* Dkt. No. 26, Ex. A at ¶ 6 ("I made my objections about Deegan's inappropriate actions known to Deegan and Miller through direct, face to face conversations on more than one occasion.").) Plaintiff alleges that as a result of his "appropriate attitudes toward women and sex . . . and [his] objections to Deegan's misconduct . . . , Mr. Deegan harbored a strong desire and intent

---

[1] According to Plaintiff's EEOC affidavit, at the time of his termination, Angela Miller was his first-line supervisor and Deegan was his second-line supervisor. (Dkt. No. 26, Ex. H at 3.)

[2] Plaintiff alleges that this was a mercenary act on Ms. Miller's part, prompted by her desire to "use" Deegan to get ahead. (Dkt. No. 16 at ¶ 18.)

to 'get rid of' Plaintiff." (Dkt. No. 16 at ¶ 16; *see also* Dkt. No. 26, Ex. A at ¶ 7.) Plaintiff indicates that Deegan made this intention known through calling Plaintiff derogatory, sex-based names such as "wuss," "faggot," and "soft." (Dkt. No. 16 at ¶ 16.)

Effecting his alleged intent to "get rid of" Plaintiff, Plaintiff alleges that Deegan concocted a large and well orchestrated conspiracy with the aim of terminating Plaintiff's employment.[3] On March 1, 2004, a TSA employee at TVC named Craig Wolf missed a required security check during his shift. (Dkt. No. 16 at ¶ 20.) Plaintiff alleges that Mr. Wolf was not disciplined for this oversight, but Plaintiff, who was working as supervisor that shift, was terminated on June 28, 2004.[4] (*Id.* at ¶¶ 21, 24.) Although Plaintiff asserts in his Amended Complaint that "there is no rule in place providing for such harsh discipline of a supervisor," (Dkt. No. 16 at ¶ 25), he acknowledges in his EEOC affidavit that the missed check was a "First Offense Removal item," for which employees are to be discharged on the first offense (EEOC Aff. 9). Plaintiff asserts that "[t]here is no evidence that any similarly

---

[3] In his affidavit, Plaintiff suggests that Deegan's accomplices included "Angela Miller and Kim Healy, along with Debi Stephens, Paul Feickert, Wally Schroeder, Nancy Hampel, Jan Hinds, and Craig Feese." (Dkt. No. 26 at ¶ 13.) In his Amended Complaint, Plaintiff adds to this list alleged Deegan paramour Assistant United States Attorney Christa Brunst. (Dkt. No. 16 at ¶ 24.)

[4] Plaintiff asserts that the intervening period between the infraction and terminations was "because Mr. Deegan and his female accomplices likely including paramours Angela Miller and Assistant United States Attorney Christa Brunst needed time to search for an arguable legal basis under which to pretextually terminate Plaintiff Mair, i.e. 'to get him' as Mr. Deegan had put it." (Dkt. No. 16 at ¶ 24.) The Court also notes, however, referencing Plaintiff's EEOC affidavit that June 28, 2004, was also his two-year anniversary of employment. (Dkt. No. 26, Ex. H at 3.)

4

situated employee was ever terminated for supervising an employee who missed a security check." (*Id.* at ¶ 25.) Plaintiff brings up the example of one Natalie Ferrari, who was not disciplined after Cindy Mikolajczak, an employee Ms. Ferrari was supervising, missed a security check. (*Id.*)

Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and EEOC accepted the issue: "[o]n the basis of sex (male), reprisal (opposition unspecified), and age (DOB-August 1, 1955), you were removed from your position on June 28, 2004." (Dkt. No. 26, Ex. H at 2.) Plaintiff received his right-to-sue letter on October 21, 2009, (Dkt. No. 16 at ¶ 43), and filed his complaint in this court January 19, 2010. His Amended Complaint was filed July 14, 2010, which included claims of sex discrimination and retaliation, and the present motion followed.

## II. Standards

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain more than "'labels and conclusions'" or a "'formulaic recitation of the elements of a cause of action . . . .'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Rather, the complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

5

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Where the facts pled are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557); *see also Albrecht v. Treon*, -- F.3d --, 2010 WL 3306877, at *2 (6th Cir. Aug. 24, 2010) ("A plaintiff falls short if she pleads facts merely consistent with a defendant's liability or if the alleged facts do not permit the court to infer more than the mere possibility of misconduct . . . .") (citation and internal quotation marks omitted).

### III. DISCUSSION

**A. Discrimination**

Title VII prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show (1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was treated differently than a similarly situated individual outside the protected class. *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004). "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex.'" *Oncale v. Sundowner*

*Offshore Servs.*, 523 U.S. 75 (1998).

Plaintiff proceeds on a theory of sex stereotyping as adopted by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). In *Price Waterhouse,* the plaintiff was passed over for partnership in an accounting firm in part because she was considered too "macho" and aggressive. *Id.* at 235. The plaintiff was told that she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* at 235. The Supreme Court concluded that making employment decisions based on sex stereotyping, i.e., "evaluat[ing] employees by assuming or insisting that they match[] the stereotype associated with their group," is actionable discrimination under Title VII. *See id.* at 251.

Defendant argues that Plaintiff has not plead a valid discrimination claim because the alleged discrimination was not based on Plaintiff's appearance or mannerisms, as in *Price Waterhouse*. Defendant relies on *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 764 (6th Cir. 2006), which held that a plaintiff's sex stereotyping claim failed where his complaint did not allege that "he did not conform to traditional gender stereotypes in any observable way at work." The plaintiff in *Vickers* maintained that he was discriminated against because of his perceived homosexual practices, which his coworkers thought "did not conform to the traditionally masculine role." *Id*. at 763. The Sixth Circuit held that a sex stereotyping theory under *Price Waterhouse* was not broad enough to support such a claim. Vickers' claim failed because he "made no argument that his appearance or mannerisms on

7

the job were perceived as gender non-conforming in some way and provided the basis for the harassment he experienced." *Id.* Defendant points out that the present case also fails to allege any discrimination based on appearance or mannerisms; rather, the complaint alleges discrimination resulting from Plaintiff's opinions on appropriate gender relations, his sexual mores, and his willingness to be vocal about those views with his coworkers and superiors. (Dkt. No. 21 at 10.)

Plaintiff accuses Defendant of attempting to re-characterize this action as a species of "homosexual rights" claims by relying on *Vickers*. The Court agrees that Plaintiff's sexual identity or behaviors are not at issue in this case. However, Plaintiff does not address Defendant's main point, which is that Plaintiff has not alleged any discrimination based on non-conformity with a gender stereotype. After careful consideration, the Court finds that Plaintiff's claim must fail because he has not alleged any *gender-based* discrimination.

The facts presented by Plaintiff, taken as true, do not permit the Court to infer that Deegan's alleged preference for men who partied and were promiscuous was based on gender. Although Plaintiff claims that he was terminated for a mistake made by an employee named Craig Wolf, he does not allege that Deegan failed to hold Wolf responsible because he fit Deegan's alleged view of masculinity. (Doc. No. 16 at ¶¶ 20-24.) Similarly, Plaintiff alleges that a female Supervisory Transportation Security Screener who made an error similar to the one Plaintiff was terminated for was treated more favorably, but does not claim that her behavior was gender-appropriate in Deegan's eyes either. (*Id.* at ¶ 25.) Most tellingly,

8

Plaintiff's allegation that Angela Miller was promoted by Deegan because she responded positively to his advances suggests that Deegan favored promiscuity generally, and belies any claim that Deegan's alleged preference for those who were interested in "partying" or extramarital affairs was gendered. (*See id*. at ¶ 15.)

The thrust of the factual allegations in Plaintiff's complaint is that Deegan did not like him because Plaintiff openly disapproved of Deegan's alleged affairs and attitudes on sexual matters, and that Deegan then found an excuse to terminate him. Plaintiff does not allege that he was discriminated against because he is a man or even an atypical man, but because he was committed to his spouse and took issue with Deegan for having more permissive attitudes and behavior. (*Id*. at ¶ 16.)[5] He does not allege that Deegan treated women better, he alleges that licentious people were treated better. (*See id*. at ¶ 15.) Unfortunately for Plaintiff, those holding traditional family values are not a protected class under Title VII, nor does a supervisor's preferential treatment of a paramour or drinking buddy constitute discrimination under the statute. *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 308 (2d Cir. 1986); *see also Schobert v. Ill. Dep't of Transp.,* 304 F.3d 725, 733 (7th Cir. 2002) ("Whether the employer grants employment perks to an employee because she is a protegé, an old friend, a close relative or a love interest, that special treatment is permissible [under Title VII] as long as it is not based on an impermissible classification"); *Womack v.*

---

[5] Indeed, the Court finds no basis in the complaint for inferring that Deegan would have reacted at all differently had Plaintiff been a woman making similarly vocal objections to Deegan's views and conduct.

*Runyon,* 147 F.3d 1298, 1300 (11th Cir. 1998) (per curiam) (agreeing with the defendant that "Title VII does not encompass a claim based on favoritism shown to a supervisor's paramour"); *Taken v. Okla. Corp. Comm'n,* 125 F.3d 1366, 1370 (10th Cir. 1997) ("Taking plaintiff's allegations as true, we conclude that they do not state a claim for relief under Title VII because they are based on a voluntary romantic affiliation, and not on any gender differences."); *Becerra v. Dalton,* 94 F.3d 145, 149-50 (4th Cir. 1996) (same).[6] While Deegan's alleged motivation for terminating Plaintiff may have been unfair, and even malicious, it was not based on gender, and "personal conflict does not equate with discriminatory animus." *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 791 (6th Cir.

---

[6] In his response brief, Plaintiff attempts to defend his discrimination claim by referencing a passage from the EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism, N-915.048 (1/12/90). (Dkt. No. 25 at 16) ("[T]he EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favortism should be given deference, and it supports the fact that Plaintiff has a valid claim for discrimination . . . .") The passage reads in part:
> "If favoritism based upon the granting of sexual favors is widespread in a workplace, both men and female colleagues can establish a hostile work environment in violation of Title VII regardless of whether any objectionable conduct was directed at them and regardless of whether those who were granted favorable treatment willingly bestowed the sexual favors."

However, Plaintiff does not explain why a policy guideline concerning hostile work environment claims of sexual harassment should impact analysis of Plaintiff's discrimination claim. Plaintiff's amended complaint does not contain an explicit hostile work environment claim. (Dkt. No. 16 at ¶ 29 ("Plaintiff's claims arise out of Defendant's unlawful, discriminatory discharge and continued retaliation against Plaintiff Mair in violation of 42 U.S.C. §§ 2000e(3)(a) and 2000e-16.").) Furthermore, the facts alleged by Plaintiff would not permit the court infer a hostile work environment claim, which must be characterized by "severe or pervasive" harassment. And, finally, any hostile work environment claim would be barred for failure to exhaust administrative remedies, as Plaintiff did not raise a hostile work environment claim in his EEOC Complaint. (Dkt. No. 10, Ex. E.)

2000) (quoting *Barnett v. Dep't of Veterans Affairs,* 153 F.3d 338, 342-43 (6th Cir. 1998)).

**B. Retaliation**

Plaintiff also brings a Title VII retaliation claim. The elements of a Title VII retaliation claim include (1) plaintiff was engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Morris,* 201 F.3d at 792.

The second and third elements are not seriously disputed for the purposes of this motion; Plaintiff alleges that he was outspoken regarding his opposition to Deegan's views and behavior, and Plaintiff's termination certainly qualifies as an adverse employment action. With respect to the fourth element, Plaintiff devotes considerable argument to his position that his termination for failure to follow a TSA procedure was mere pretext for Deegan's desire to get rid of Plaintiff because of his vocal opposition to Deegan's attitudes and behavior. (Dkt. No. 25 at 18-22.) The Court agrees that Plaintiff has plead sufficient facts with respect to these elements, and that Defendant's alternative motion for summary judgment with respect to the required causal connection is premature.

However, the Court finds that Plaintiff's retaliation claim must fail because Plaintiff has not alleged facts to show that he was engaged in a protected activity. Protected activity includes "oppos[ing] any practice made an unlawful employment practice by [Title VII]."

Opposition includes "conduct such as 'complaining to anyone . . . about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer . . . .'" *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (quoting *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 579 (6th Cir. 2000)).  Although a challenged practice need not ultimately be found unlawful for a retaliation claim to succeed, the "manner of opposition must be reasonable" and the opposition must be based on "a reasonable and good faith belief that the opposed practices were unlawful." *Johnson*, 215 F.3d at 579.

Plaintiff alleges that he was terminated in retaliation for his vocal objections to Deegan's "attitudes and actions regarding sex and gender." (Dkt. no1 16 at ¶ 15.) Specifically, Plaintiff objected to Deegan's "hitting-on" Kathy Humphreys while she was at her post, and his promotion of Angela Miller to Screening Manager purportedly because of their consensual sexual relationship. (*Id.*)[7]

Plaintiff does not allege that Deegan's alleged affair or sexual proposition are themselves illegal, nor could he have reasonably believed them to be illegal under Title VII. Likewise, Deegan's personal views regarding gender could not form the basis of a reasonable

---

[7] Plaintiff does state in a parenthetical that Deegan "consistently g[ave] favorable treatment to female coworkers," but alleges no facts other than those noted above. This statement, without more, does not satisfy the Plaintiff's burden to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Furthermore, this bald statement is at odds with the whole of Plaintiff's complaint, which suggests favoritism based on licentiousness views and behavior, not gender. *See supra* Part III.A.

belief that Defendant was violating Title VII. A somewhat closer question is whether Plaintiff could have reasonably believed that Deegan's promotion of Angela Miller was a violation of Title VII. However, the Court is inclined to agree with a number of Courts which have found that plaintiffs who express opposition to consensual affairs in the workplace do not have a reasonable and good faith basis to believe they are opposing unlawful practices. *See Anderson v. Okla. State Univ. Bd. of Regents*, No. 08-6249, 342 F. App'x 365, 368 (10th Cir. Aug. 17, 2009) (unpublished) ("[T]he district court correctly ruled that Mr. Anderson's actions in reporting Mr. Hughes's affair and favoritism of Ms. Kiner did not constitute opposition to an employment practice made unlawful by Title VII."); *Sherk v. Adesa Atlanta, LLC*, 432 F. Supp. 2d 1358, 1372 (N.D. Ga. 2006) (adopting magistrate judge's report and recommendation holding that "[a]rmed with clear holdings from the Eleventh Circuit as well as numerous other courts that favoritism is genderneutral, a reasonable person would not conclude that her supervisor's favoritism for his paramour violated Title VII because her employer had adopted a more restrictive policy in its ethics handbook and had disciplined her quickly for complaining about the relationship."); *Sullivan-Weaver v. N.Y. Power Auth.*, 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000) ("Because the facts pleaded are insufficient to support a good faith, reasonable belief that Plaintiff's replacement by another woman with whom her supervisor allegedly had a romantic relationship constituted discrimination based on gender within the plain meaning of the statute and the *DiCintio* case, any retaliatory acts that she may have suffered as a result of that opposition

were not in reaction to a 'protected activity,' and, therefore, not actionable under Title VII.");

*Harvey v. Chevron U.S.A., Inc.*, 961 F. Supp. 1017, 1033-34 (S.D. Tex. 1997) (same).

Accepted as true, the facts alleged in Plaintiff's complaint call into question the fairness and professionalism of his superiors. However, they can not support a reasonable, good faith belief that they were acting unlawfully. Thus, Plaintiff's vocal objections to Deegan and Miller's views and behavior were not protected activity, and Plaintiff's retaliation claim must fail.[8]

## IV CONCLUSION

While the Court is not unsympathetic to Plaintiff's case, the facts presented in Plaintiff's amended complaint do not state a viable Title VII claim. Plaintiff has not alleged discrimination based on gender, nor has he alleged facts which indicate that any alleged retaliation occurred in response to a protected activity. Accordingly, Defendant's motion to dismiss under Rule 12(b)(6) will be granted. An order consistent with this opinion will be entered.

Dated: December 14, 2011 　　　　　　　　　　　/s/ Robert Holmes Bell
　　　　　　　　　　　　　　　　　　　　　　ROBERT HOLMES BELL
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[8] In addition to claiming retaliation in the form of his termination, Plaintiff alleges that Defendant further retaliated against him by attempting to dispute his unemployment benefits, and by withholding post-termination health benefits. (Dkt. No. 26 at 22.) Defendant maintains that these retaliation claims are barred for failure to exhaust administrative remedies, as Plaintiff did not raise them in his formal EEOC complaint. (Dkt. No. 21 at 18-19.) However, the Court need not address whether these claims should be barred on this basis, as these claims rest on the same theory of discrimination as Plaintiff's claim of retaliatory discharge and, as such, must fail for the same reasons.